UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>PHILLIPS CHARLES, )<br>)<br>Defendant. )<br>) | Docket Number: 21CR10099-001 |

### DEFENDANT PHILLIPS CHARLES NOTICE PURSUANT TO THE COURT'S PROCEDURAL ORDER AND MEMORANDUM ON SENTENCING

Defendant Phillips Charles comes before the Court for sentencing after having taken responsibility for his actions and pled guilty to drug and firearms conspiracy charges. Pursuant to the Court's procedural order dated April 27, 2022 (Docket No. 154), Mr. Charles provides notice that he is not moving for a departure or non-guideline sentence and there are no legal or evidentiary questions to raise regarding sentencing. Mr. Charles recognizes the serious nature of his conduct and is deeply remorseful for it. While he has been in custody, he has actively taken steps to better himself so he can obtain gainful employment and support his family upon release. For the reasons set forth in this memorandum, a sentence of 78 months incarceration pursuant to the plea agreement entered into by the government and Mr. Charles reflects the seriousness of the offense and also satisfies the deterrent and rehabilitative purposes of sentencing under 18 U.S.C. § 3553(a).

### I. Procedural History

The offense for which Mr. Charles has pled guilty arises from a state and federal investigation of a conspiracy dating from January 2019 to deal controlled substances and possess firearms in furtherance of the drug conspiracy. Mr. Charles was arrested on state charges related

1

to this matter on October 20, 2019 and remanded to state custody on that date. He was indicted in Middlesex Superior Court on the related state charges on March 6, 2020, and continued to be held in custody until April 17, 2020, when bail was posted on his behalf. He was re-arrested by state authorities on December 3, 2020, and taken into state custody. Mr. Charles was transferred from state custody to federal custody on April 21, 2021, where he currently remains. His total period of federal detention is 505 days through the date of sentencing on September 7, 2022, and his total period of state custody is 321 days, from October 20, 2019 to April 18, 2020 (182 days) and again from December 3, 2020 to April 21, 2021 (139 days). Other than a single report, his records from Norfolk demonstrate that he has remained infraction free during his time there. (PSR ¶ 4.)

On March 21, 2021, Mr. Charles made his initial appearance in federal court on a criminal complaint charging him with unlawful conduct between March 25, 2019 to December 3, 2020: Count One, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § § 846 and 841(a), (b)(1)(B)(iii); and Count Two, Conspiracy to Possess Firearms in Furtherance of, and Use and Carry Firearms During and in Relation to, a Drug Trafficking Conspiracy, in violation of 18 U.S.C. § 924(o). (*See* Doc. 1-2, Aff. in Support of Application for Criminal Compl.) The government subsequently indicted him on those charges on March 31, 2021. (*See* Doc. 10, Indictment.) On April 14, 2021, the government superseded the indictment, including charges against co-defendants Jaiir Coleman and Christina Bernbaum. (*See* Doc. 21, Superseding Indictment.) On May 12, 2021, the government issued a second superseding indictment that included charges against co-defendant Armani Minier-Tejada.

On April 26, 2022, Mr. Charles fully accepted responsibility for his role in the conspiracy, specifically pleading to Count One, Conspiracy to Distribute 28 Grams or More of a Mixture or Substance Containing a Detectable Amount of Cocaine Base, 21 U.S.C. § § 846 and 841(a), (b)(1)(B)(iii), and Count Two, Conspiracy to Possess Firearms in Furtherance of, and Use and Carry Firearms During and in Relation to, a Drug Trafficking Conspiracy, in violation of 18 U.S.C. § 924(o). Should the Court accept Mr. Charles' plea, the parties have agreed to the following sentence pursuant to a Rule 11(c)(1)(C) plea agreement: 78 months imprisonment, 4 years supervised release, no fine, $200 special penalty assessment, and forfeiture pursuant to Paragraph 7 of the plea agreement. (*See* Doc. 155, Plea Agreement.)

## II.     Application of the Guidelines

The presentence report calculated the Total Offense Level as 27, reducing the Adjusted Offense Level of 30 for both counts by three points for acceptance of responsibility. (*See* PSR ¶¶ 48-61.) Based on a Criminal History Category II (PSR ¶ 65), Mr. Charles' guideline range is 78-97 months. (PSR ¶ 95.)

## III.    Sentencing Considerations

### A. Nature & Circumstances of the Offense

This case involves a drug and firearms conspiracy involving four co-defendants that ran from January 2019 to December 2021. Mr. Charles understands that offense is serious in nature and involves conduct that had dangerous consequences for his community. He fully accepts his role in the offense, which is reflected in the presentence report's recitation of the offense conduct.

## B. History & Circumstances of the Defendant

Mr. Charles was born in Boston and was primarily raised by his mother after his parents divorced when he was ten. (PSR ¶ 73.) His mother worked multiple jobs to raise him and his three siblings in a loving and supportive environment for him. However, she needed to send him and his younger sister to live with her family in Haiti for long periods of time when he was 11, 13, and 15, which was a difficult experience because of the poverty and gang violence in the country, which he observed first-hand. (*Id.* ¶ 73-74.) In Haiti, he experienced routine physical abuse in his school because he did not speak French, which was a required language in Haitian schools, and was disciplined as a result. (*Id.* ¶ 74.) Upon returning to Massachusetts from Haiti, Mr. Charles was entering 9th grade as a 17-year-old, well behind his class because of his back-and-forth travels to Haiti and dropped out by the time he turned 18. (*Id.* ¶ 85.)

Mr. Charles attempted to gain employment while he was in school and after he dropped out, working in various jobs, including as a dishwasher, cashier, and a bouncer. (PSR ¶ 88-90.) He suffered a serious health setback when he was 19, suffering from severe lung disease, requiring hospitalization for seven months and resulting a collapsed lung, which required further hospitalization. (*Id.* ¶ 78.) He further suffered from a bullet wound when he was subsequently shot in the back. (*Id.* ¶ 79.) The bullet is still lodged in his body, causes him continued pain at times, and limits his mobility. (*Id.*) He also suffers from high blood pressure and hypertension, which requires medications. (*Id.*)

Mr. Charles began to engage in substance abuse as a teenager, which coincided with his difficulties in school. (PSR ¶ 83.) He began using marijuana at age 15 and first consumed alcohol shortly after that. (*Id.*) His marijuana use escalated to smoking ten joints a day due to stress or boredom. (*Id.*) After being shot, he began using Oxycotin to help relieve the pain, which he used

4

daily until he was arrested. (*Id.*) Mr. Charles recognizes that he had a dependency on marijuana and Oxycotin prior to his arrest in this matter and believes he would benefit from treatment. (*Id.*)

Although he suffered trauma as a child and teenager, he did not obtain mental health treatment until he was taken into custody since his arrest in this matter. (PSR ¶¶ 81-82.) He was diagnosed with depression and has been prescribed medications and meets with mental health treaters regularly. (*Id.* ¶ 81.) He believes that he would benefit from continued mental health treatment during incarceration. He has also tried to take any available opportunity to better himself while in custody. When he was in state custody, he participated in mental health. self-care, anger management, and parenting programs. (*Id.* ¶ 81.) Although his programming opportunities were limited while he was detained at Wyatt during the Covid-19 pandemic, when he was moved to Norfolk, he was able to complete his GED. (*Id.* ¶ 84.)

Mr. Charles has one child, a baby boy, who he has been unable to meet or spend time with due to his incarceration. (PSR ¶ 76.) Although the baby's mother and his mother and sister help take care of him, Mr. Charles recognizes the impact his conduct and incarceration has had on him because he has not been able to be there for his son and his son's mother. (*Id.*) He wants to do everything he can to make up for it when he is released from incarceration. (*Id.*) In her letter of support, the baby's mother, Mylia Elmore, shared that Mr. Charles has the traits necessary to be a loving father and support system for their family. (*See* Ex. A, Letter of Support from Elmore.) She reported that while they were dating in high school, "he was such a great support system [for her]" because "[her] life at home wasn't really stable." Mr. Charles "always made sure [she] had something to eat and that [she] was always safe." (*Id.*) Specifically, when Ms. Elmore faced eviction, Mr. Charles and his mother provided her with a home and Mr. Charles supported her emotionally then and after they had a baby together. Ms. Elmore further

5

stated that Mr. Charles "is the type of person that helps his friends in need when they're at their lowest." (*Id.*)

In their letters of support, Mr. Charles' family, including his mother, two sisters, and brother, shared that Mr. Charles has positive qualities that have enabled him to take accountability for his actions and start the path for a better future. His mother Dorothy Antoine indicated that her son is "a kind selfless loving individual" despite growing up without a father figure. (*See* Ex. B, Letter of Support from Antoine.) She noted that he showed strength when he was hospitalized and almost lost his life twice. (*Id.*) She further indicated that she will provide a supportive environment for her son when he is released because she has been able to slow down from work after all these years, will be home more in their suburban home in West Malden, and her church community will be a support for Mr. Charles as well. (*Id.*)

Mr. Charles' three siblings also reported that Mr. Charles has been supportive to them and helped them succeed in their personal and professional lives even as his path took a negative turn. His older sister Sherley Jules, a clinical social worker who now works in the pharmaceutical industry, indicated that her brother "is the clown of the family and our teddy bear" and that "[h]e has always been the most giving and loving out of all of us." (*See* Ex. C, Letter of Support from Jules.) She noted that "[h]e'd give the shirt of his back just to make sure you are okay," and provided an example of Mr. Charles being her "cheerleader" when she fell into a depression when she was trying to complete her graduate studies. (*Id.*) Ms. Jules noted that Mr. Charles is a "loving father, protector, hard worker, and supportive brother and son," and emphasized that "[h]e is supported by his praying family that he will have a structure, a stable home and unconditional love when he is released." (*Id.*) His younger sister Nehemie Charles stated that "Growing up my brother had always made me feel protected and happy, especially

6

when we stayed in Haiti for a couple of years." (Ex. D, Letter of Support from Nehemie Charles.) She further noted that Mr. Charles' positive attitude through his hospitalizations inspired her, stating "Seeing how strong and positive my brother was during my twenty years of living has made me see the world a different way and as an inspiration, to never give up no matter how tough life gets." (*Id.*) His brother, Scott Jules, a union member, recognizes that Mr. Charles has the capacity to work hard and obtain a good job, and has indicated that he will be there to teach his brother how to be financially responsible and obtain a stable union position so he can support his family. (Ex. E, Support Letter from Scott Jules.)

### C. Providing Just Punishment, Adequate Deterrence

A sentence of 78 months of imprisonment would reflect the seriousness of the offense and Mr. Charles' participation in it. Such a sentence, which is within the guideline range for the charges, will provide a just punishment for his conduct and also adequately deter Mr. Charles from engaging in any similar conduct in the future. Mr. Charles has already learned serious lessons from his conduct and tried to improve himself as best as he can while in pretrial detention. This sentence would also ensure that Mr. Charles can return to his family while his son is still young and begin the process of rebuilding his life by obtaining employment and educational opportunities to support his family.

### IV. Specific Sentencing Requests

Mr. Charles respectfully requests that the Court recommend that he receive substance abuse treatment through the RDAP program and be designated to a facility in close proximity to his family.

## V.     Conclusion

For the reasons set forth above, Mr. Charles asks that this Court sentence him to 78 months of imprisonment, crediting him for the time he has served in federal custody and in state custody on cases related to the charges. Such a sentence will be sufficient but not more than is necessary to achieve the goals of our federal sentencing system. Mr. Charles asks the Court to allow him to prove to himself, to his family and community, and to the Court that he can and will be a productive member of society.

Dated: September 1st, 2022

                                                    Respectfully submitted,
                                                    Phillips Charles
                                                    By his attorney,

                                                    /s/ Monica Shah

                                                    _____
                                                    Monica Shah (BBO #664745)
                                                    Zalkind Duncan & Bernstein LLP
                                                    65A Atlantic Avenue
                                                    Boston, MA 02110
                                                    617-742-6020
                                                    mshah@zalkindlaw.com

## CERTIFICATE OF SERVICE

I Monica Shah, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_____
Monica Shah